UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:25-cv-00938-MOC

| | | |
|---|---|---|
| MOSTAFA SAID, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| | ) | |
| KRISTI NOEM, in her official capacity | ) | |
| as Secretary of Homeland Security, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Petition for Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2241 and Complaint for Injunctive and Declaratory Relief [Doc. 1] and

Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction

[Doc. 3], which the Court considers a motion for preliminary injunctive relief.

I.     BACKGROUND

Petitioner Mostafa Said ("Petitioner") is a native and citizen of Egypt. He fled Egypt due

to persecution and entered the United States on September 9, 2024, without inspection. [Doc. 1 at

¶¶ 1, 15]. Petitioner was apprehended the same day by U.S. Customs and Border Protection. [Doc.

1 at ¶ 15]. On September 10, 2024, the Department of Homeland Security (DHS) issued a Notice

and Order of Expedited Removal ("Form I-860") to Petitioner.[1] [Doc. 8-1 at 8]. The Form I-860

reflects that Petitioner was then subject to removal because he "w[as] not then admitted or paroled

---

[1] Petitioner, through counsel, refutes ever having received the Form I-860. [Doc. 11-1 at ¶ 3]. The Form I-860, however, reflects having been personally served on the Petitioner by a Border Patrol Agent on September 10, 2024, and is signed by the Petitioner. [See Doc. 8-1 at 8-9].

after inspection by an Immigration Officer."[2] [Doc. 8-1 at 8]. The Order of Removal found that Petitioner was inadmissible and subject to removal under INA § 235(b)(1) [Doc. 8-1 at 8], which is codified as 8 U.S.C. § 1225(b)(1).

On September 20, 2024, Petitioner made a claim for relief from removal. [Doc. 8-1 at 1, ¶ 8: Stephens Dec.]. On October 24, 2024, the DHS made a positive initial determination on Petitioner's claim for relief and served a Notice to Appear (NTA) on Petitioner, noted that "You are an alien present in the United States who has not been admitted or paroled;" and placed Petitioner in standard removal proceedings under INA § 240, 8 U.S.C. § 1229a. [Doc. 1-2; Doc. 8-1 at 1, ¶ 9; Doc. 1 at ¶ 17]. The NTA charged Petitioner as being subject to removal under INA § 212(a)(7)(A)(i)(l) because he did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document and under § 212(a)(6)(A)(i) because he was an alien present in the United States without being admitted or paroled after inspection by an immigration officer. [Doc. 1-2 at 1]. The NTA ordered Petitioner to appear before an immigration judge on November 7, 2024, in San Diego, California. [Doc. 1-2 at 1].

On or about November 6, 2024, the U.S. Immigration and Customs Enforcement (ICE) paroled Petitioner under the Alternatives to Detention (ATD-ISAP) program pursuant to its authority under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). [Doc. 1 at ¶ 18; Doc. 1-3; Doc. 10-1 at 2: Interim Notice Authorizing Parole ("Parole Notice")]. The Parole Notice provided that the authorization for Petitioner's parole automatically terminated after one year unless extended at the ICE's discretion. [Doc. 10-1 at 2].

---

[2] The Form I-860, however, fails to identify the grounds supporting the inadmissibility determination under INA § 212(a). [See Doc. 8-1 at 8].

On November 7, 2024, the Petitioner appeared with his attorney for his initial master calendar hearing and requested a continuance. The Immigration Judge (IJ) granted the continuance and reset the case for December 9, 2024. [Doc. 8-1 at 2, ¶ 10]. On November 25, 2024, the IJ granted a change in venue of Petitioner's removal proceedings to the Charlotte Immigration Court. [Doc. 8-1 at 15: Order of IJ]. Petitioner was allowed to travel within the United States to Charlotte, North Carolina. [Doc. 1-3 at 1: ISAP GPS Agreement].

On November 21, 2024, Petitioner filed his Form I-589 asylum application with the Charlotte Immigration Court. [Id. at ¶ 22]. On January 15, 2025, the Charlotte Immigration Court notified Petitioner that his next scheduled master calendar hearing is set for March 18, 2027. [Doc. 8-1 at 17: Notice of In-Person Hearing]. On May 20, 2025, the U.S. Citizenship and Immigration Services (USCIS) granted Petitioner eligibility for employment and issued Petitioner an Employment Authorization Document (EAD), which is valid through May 19, 2030. [Id. at ¶ 23; Doc. 1-4]. Since receiving his EAD, Petitioner has secured lawful employment and lived without incident in Winston-Salem, North Carolina. [Id. at ¶ 24].

On November 21, 2025, during a routine ATD-ISAP check-in, Petitioner was detained by ICE Enforcement and Removal Operations (ERO) in Charlotte, North Carolina, without warning and, under Respondents' position, without any possibility of a bond hearing.[3] [Id. at ¶¶ 27, 29; Doc. 1-7 at ¶ 5]. After Petitioner's detention on Friday, November 21, 2025, Petitioner for all intents and purposes disappeared for two days. On Monday, the third day, Petitioner resurfaced at the Stewart Detention Center in Lumpkin, Georgia, with no notice of transfer, its justification, or

---

[3] In Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals (BIA) held that individuals who entered without inspection are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) for the duration of their removal proceedings. 29 I&N at 220. The United States has adopted this position to categorically deny bond eligibility to noncitizens like the Petitioner.

3

information identifying the official custodian. [Doc. 4 at 3; Doc. 3-1 at ¶¶ 3-5: Qutieshat Dec.].

## II.     PROCEDURAL HISTORY

The same day as his detention, Petitioner, through counsel, filed a petition seeking relief from that detention pursuant to 28 U.S.C. § 2241, arguing that his detention violates his Fifth Amendment right to procedural and substantive due process; violates the Immigration and Nationality Act (INA), §§ 236 and 241, 8 U.S.C. §§ 1225 and 1226; the Administrative Procedures Act (APA), 8 U.S.C. § 1357(a)(2); and the Accardi doctrine; and is barred by judicial estoppel. [See Doc. 1].

For relief, Petitioner seeks a writ of habeas corpus under § 2241 directing Respondents to release him from custody or to provide him with a prompt bond hearing under 8 U.S.C. § 1226(a), a declaration that Matter of Yajure-Hurtado is unlawful as applied to Petitioner and inconsistent with the INA and the Due Process Clause, and an award of attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. [Doc. 1 at 12]. Petitioner also sought the issuance of a temporary restraining order prohibiting Respondents from removing or transferring the Petitioner outside the jurisdiction of this Court or the United States pending adjudication of this case, which the Court granted on November 25, 2025, and extended on December 9, 2025. [Id.; Doc. 12 at 3].

On November 25, 2025, Petitioner filed a motion for preliminary injunctive relief, asking the Court to order Respondents to provide him with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) or release Petitioner from custody under reasonable conditions of supervision. [Doc. 3]. Petitioner further asks the Court to enjoin Respondents from denying bond eligibility on the sole basis that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2) and the BIA's decision in Yajure-Hurtado. [Id. at 1-2]. If Petitioner is released on bond or supervision, Petitioner

additionally requests that the Court enjoin Respondents from rearresting him absent a new criminal conviction, a failure to appear at a properly noticed immigration or judicial proceeding, or detention pursuant to a final order of removal.  [Id. at 2].

In response, Respondents opposed the grant of injunctive relief and claimed that Petitioner was detained pursuant to 28 U.S.C. § 2255(b)(1), which mandates detention, not § 2255(b)(2), after his humanitarian parole granted under § 1182(d)(5)(A) was revoked due to alleged ISAP violations.  [Doc. 8].  Respondents also argue that this Court lacks jurisdiction over the discretionary decision to revoke Petitioner's parole based on various jurisdiction-stripping provisions of the INA, including 8 U.S.C. §§ 1225(b)(1)(A)(iii), 1252(a)(2)(A), 1252(a)(2)(B), 1252(b)(9), 1252(e), and 1252(g).[4]  [See id. at 14-18].

After the Court pointed out that Respondents failed in their response to demonstrate compliance with 8 C.F.R. § 212.5(e)(2)(i) in revoking Petitioner's humanitarian parole [Doc. 9], Respondents withdrew that argument and instead now claim that his parole automatically terminated after one year from November 6, 2024, pursuant to the Parole Notice.  [Doc. 10 at 2-3].  Presumably, therefore, Respondents contend that Petitioner was duly arrested on November 21, 2025, because his parole automatically terminated and that he is currently detained pursuant to § 2255(b)(1).

In reply, Petitioner maintains that he is detained pursuant to § 1226(a). Petitioner argues that once the DHS issues an NTA designating a noncitizen as present without admission or parole, § 1226(a) "governs detention going forward, regardless of prior processing under expedited removal or DHS's *post hoc* litigation position."  [Doc. 11 at 3].  Petitioner contends that Respondents cannot avert the INA by effectively "rebranding" Petitioner as an "arriving alien"

---

[4] Respondents, of course, have since withdrawn their position that Respondents revoked Petitioner's parole and now contend that his parole automatically terminated.

subject to mandatory detention under § 1225(b)(1). Alternatively, Petitioner argues that, even if Petitioner were detained under § 1225(b)(1), due process nonetheless requires he be afforded a bond hearing. [Id. at 4-5].

Given the conflicting factual and legal positions of the parties, the Court set this matter for hearing on December 17, 2025. [Doc. 12].

III.     LEGAL STANDARD

The "essence of habeas corpus" is "an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Under § 2241, federal district courts are granted broad authority, "within their respective jurisdictions," to hear applications for writs of habeas corpus filed by persons claiming to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c). In other words, the function of a habeas petition is to challenge "the very fact or duration of [the petitioner's] physical imprisonment, and the relief that [the petitioner] seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment…." Preiser, 411 U.S. at 500.

IV.     DISCUSSION

As a threshold matter, this Court has jurisdiction to consider Petitioner's habeas challenge to his detention whether his parole was revoked or automatically terminated. The Petitioner is not challenging the automatic termination of his parole or any procedures or policies implementing expedited removal under § 1225(b)(1). Rather, he is challenging whether § 1225(b) applies to him at all and whether his current ongoing detention violates the INA and the Constitution. Nothing in the provisions cited by the Respondents removes this Court's authority to review and adjudicate Petitioner's habeas petition under the circumstances here. See Reno v. American-Arab Anti-

Discrimination Comm., 525 U.S. 471, 482-87 (rejecting a broad reading of § 1252(g)); Cheng Fan Kwok v. INS, 392 U.S. 206, 212 (1968) (the INA "must be construed with precision and fidelity to Congress's terms").

Moreover, although Petitioner has since been transferred to a detention facility located in the Middle District of Georgia, the place of confinement at the time of filing governs the jurisdiction determination, especially where, as here, the immediate custodian was then unknown. United States v. Little, 392 F.3d 671, 680 (4th Cir. 2004) (noting that because petitioner was confined in Texas when his petition was filed, the Western District of North Carolina was an improper venue); Suri v. Trump, 785 F.Supp.3d 128, 141-42 (E.D. Va. May 6, 2025) (describing the unknown custodian rule and concluding that the noncitizen detainee's ultimate custodian was the Secretary of the Department of Homeland Security). Respondents made the decision to detain and reclassify Petitioner while he was physically present in Charlotte, North Carolina, and the petition was filed before Petitioner essentially disappeared for two days and resurfaced in Georgia. As such, this Court has jurisdiction over the habeas petition.

### A. Applicable Statute

Section 1225(a) provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission are divided into two categories: those covered by § 1225(b)(1) and those covered by § 1225(b)(2). See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," id. (citing 8 U.S.C. § 1225(b)(1)(A)(i)), as well as to other aliens who receive special designation by the Attorney General, 8 U.S.C. § 1225(b)(1)(A)(iii). Section 1225(b)(2) applies to all other applicants.

See Jennings, 583 U.S. at 287 (explaining that § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)").

Both § 1225(b)(1) and (b)(2) require the detention of persons deemed to be applicants for admission. Applicants for admission covered by § 1225(b)(1) are removed "without further hearing or review" pursuant to an expedited removal process unless the person "indicates either an intention to apply for asylum ... or a fear of persecution," in which case that person is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)). Persons who make no such claims or are "found not to have such a fear" "shall be detained ... until removed." 8 U.S.C. § 1225(b)(1)(A)(ii), (B)(iii)(IV).

Applicants for admission covered by § 1225(b)(2) are detained pursuant to different processes. They "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond doubt entitled to be admitted" into the United States. Id. § 1225(b)(2)(A). In any case, "[b]oth provisions require that any applicant for admission remain detained until their asylum application is fully adjudicated or until removal proceedings conclude." Olaya Rodriguez v. Bondi, 2025 WL 2490670, at *2 (E.D. Va. June 24, 2025).

Noncitizens detained pursuant to §§ 1225(b)(1) and (b)(2) can, however, be paroled pursuant to § 1182(d)(5)(A). See Jennings, 583 U.S. at 300 ("That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released." (emphasis in original)). This parole authority is "not unbounded: DHS may exercise its discretion to parole applications 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit.'" Biden v. Texas, 597 U.S. 785, 806 (2022).

Section 1226(a), on the other hand, sets forth "the default rule" for detaining and removing aliens "already present in the United States." Jennings, 583 U.S. at 303, 138 S.Ct. 830; see Abreu v. Crawford, 2025 WL 51475, at *3 (E.D. Va Jan. 8, 2025) ("There is a statutory distinction between noncitizens who are detained upon arrival into the United States and those who are detained after they have already entered the country, legally or otherwise."). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," "release the alien on bond of at least $1,500," or "release the alien on conditional parole." Id. § 1226(a)(1)-(2).

The distinction between "aliens seeking admission into the country" governed by § 1225(b) and "aliens already in the country" governed by § 1226(a), Jennings, 583 U.S. at 289, "makes sense in the broader context of U.S. immigration law." Hasan v. Crawford, --- F.Supp.3d ---, 2025 Wl 2682255 (E.D. Va. Sept. 19, 2025). That is, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). For those who have already entered the United States, "the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (citation omitted).

According to the Form I-860, the Petitioner was initially detained and subject to expedited removal under § 1225(b)(1). Petitioner, however, promptly sought relief from removal and, on October 24, 2024, the DHS made a positive initial determination on his claim and issued an NTA classifying Petitioner as "an alien present in the United States who has not been admitted or

9

paroled" and affirming that he "was not then admitted or paroled after inspection by an Immigration Officer." The DHS placed Petitioner in standard removal proceedings under § 1229a.[5] Then, on November 6, 2024, the ICE granted Petitioner humanitarian parole under § 1182(d)(5)(A) and paroled him under the ATP-ISAP.

Because the DHS issued an NTA designating Petitioner, a noncitizen, as present without admission or parole, § 1226(a) governs his detention going forward, regardless of prior processing under expedited removal or DHS' subsequently adopted position in Yajure Hurtado. Regardless of whether Petitioner was originally detained under § 1252(b)(1), Respondents cannot ignore the plain language of the NTA and retroactively recharacterize the Petitioner, who has clearly been present in the United States without admission and paroled for over a year, as an "arriving alien" or an "applicant for admission" to support his continued detention without a bond hearing.

Moreover, the Court is persuaded by the recent decision in Coalition for Humane Immigrant Rights v. Noem. No. 25 Civ. 872 (JMC), ---- F.Supp.3d ----, ----, 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025), which held that § 1225 does not authorize expedited removal of

---

[5] A § 1229a or § 240 removal proceeding is the standard mechanism for removing inadmissible noncitizens. See generally 8 U.S.C. § 1299a. These proceedings take place before an Immigration Judge (IJ) who must be a licensed attorney and has a duty to develop the record before them. Coalition For Humane Immigrant Rights v. Noem, No. 25-CV-872 (JMC), 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025) (citing 8 U.S.C. § 1229a(a)(1), (b)(1) ("The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses.").). On the other hand, a noncitizen may be placed in "expedited removal" status for various reasons, including having entered the United States without a valid visa or other valid entry documents. See generally 8 U.S.C. § 1225. The expedited removal process is overseen by an immigration officer, not an IJ, who asks the noncitizens questions about their "identity, alienage, and inadmissibility," and whether they intend to apply for asylum, fear persecution or torture, or fear returning to their country. 8 C.F.R. § 235.3(b)(2)(i). Noncitizens, however, are not entitled to counsel during this questioning and no recording or transcript is made. 8 C.F.R. § 235.3(b)(2)(i). If, during the expedited removal process, the noncitizen claims asylum, fear of persecution or torture, or fear of returning to his country, the officer must refer the noncitizen for a credible fear interview with an asylum officer. 8 C.F.R. § 253.3(b)(4). The asylum officer then must interview the immigrant and determine whether the noncitizen has a credible fear of persecution or torture. After supervisory review of the asylum officer's determination, it becomes effective. 8 C.F.R. § 208.30(3)(8). If there is a finding of credible fear, the case is converted to a § 1229a proceeding and set before an IJ. 8 C.F.R. § 208.30(g).

individuals who have ever been paroled into the United States under either of its provisions: §
1225(b)(1)(A)(i), which applies to individuals "arriving in" the U.S., or § 1225(b)(1)(A)(iii)(II),
which applies to individuals who "ha[ve] not been admitted or paroled" into the United States and
cannot show that they have been "physically present in the United States continuously for the 2-
year period immediately prior to the date of the determination of inadmissibility."  See Coalition,
---- F.Supp.3d at ----, 2025 WL 2192986, at *30 (explaining that "the only way to make sense of
the statutory scheme Congress created is to see that parolees fall under neither [provision of
Section 1225(b)(1)].  Any other result conflicts with other aspects of the statute and regulations,
Congress's evident purpose, and the ordinary meaning of the statute's words.").  As such, even if
Petitioner were otherwise subject to § 1225, it does not authorize his expedited removal and
mandatory detention under the circumstances here.

For these reasons, the Court finds that Petitioner's detention is governed by § 1226(a)'s
discretionary framework, not § 1225(b)'s mandatory detention procedures.

**B.      Due Process**

The Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or
property, without due process of law."  U.S. Const. amend. V.  When immigration officials detain
an alien already present in the United States subject to § 1226, as here, the Fifth Amendment
governs that alien's due process rights.  See Hasan v. Crawford, ---- F. Supp. 3d at ----, 2025 WL
2682255, at *9-13 (E.D. Va. 2025) (analyzing Fifth Amendment due process claim of detainee
petitioner subject to § 1226).  "To determine whether civil detention violates a detainee's Fifth
Amendment procedural due process rights, courts apply the familiar three-part test articulated in
Mathews v. Eldridge.  Hasan, --- F. Supp. 3d at ---, 2025 WL 2682255, at *11 (citing Mathews v.
Eldridge, 424 U.S. 319 (1976)).  Mathews requires courts to weigh three factors: (1) "the private

11

interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335-36.

"The interest in being free from physical detention" is "the most elemental of liberty interests." Hamdi v. Rumsfield, 542 U.S. 507, 529 (2004). Respondents' subjecting the Petitioner to mandatory detention for the duration of his removal proceedings plainly implicates this interest. The first Mathews factor, therefore, weighs heavily in Petitioner's favor. See Hasan, --- F. Supp. 3d at ---, 2025 WL 2682255, at *9-11 (finding that automatic stay of immigration bond orders violated petitioner's due process rights under Mathews factor one).

Next, the second Mathews factor also weighs heavily in Petitioner's favor, as he is presently and erroneously detained under the mandatory detention provisions of § 1225, without a bond hearing. That is, Petitioner has not – and will not absent intervention here – receive even the most fundamental process due a detainee subject to § 1226. Thus, the value of "additional" procedural safeguards, that is, a bond hearing, is not just "probable," but tangible and definite. Moreover, Respondents do not suggest grounds for the denial of bond should Petitioner be afforded a hearing. Furthermore, even if § 1225 were statutorily applicable to Petitioner, his re-detention without prior notice or a meaningful opportunity to respond does not satisfy the procedural requirements of the Fifth Amendment. See Munoz Materano v. Arteta, ---- F.Supp.3d ----, ----, 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025).

Finally, as to the third Mathews factor, the United States' interest in detaining noncitizens are typically "ensuring the appearance of aliens at future immigration proceedings" and

12

"preventing danger to the community." See, e.g., Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (cleaned up). This factor also weighs heavily in Petitioner's favor. That is, Respondents do not dispute that he has no criminal record, is not a flight risk, and has been wholly compliant with all ICE requirements. Moreover, any additional administrative or fiscal burden in conducting the required bond hearing is minimal.

From the balance of the Mathews factors, the Court easily concludes that Petitioner's mandatory detention under § 1225(b) violates his procedural due process rights.[6] The Court, therefore, grants the preliminary injunctive relief sought by Petitioner.

## V. CONCLUSION

In sum, because Petitioner has shown that he is likely to succeed on the merits of his claim that his mandatory detention is unlawful under the INA and/or violates his procedural due process rights, the Court grants his motion for preliminary injunctive relief.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 3] is **GRANTED** in accordance with the terms of this Order.

2. Respondents shall **HOLD A BOND HEARING** in front of an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within **forty-eight (48) hours** of this Order.

3. Respondents are **ENJOINED** from denying bond to Petitioner on the grounds that he is detained pursuant to 8 U.S.C. § 1225(b).

4. Respondents **FILE** a status report with this Court within **three (3) days** of the bond hearing, stating whether Petitioner has been granted bond, and, if his request for bond

---

[6] The Court declines at this time to consider Petitioner's remaining claims based on substantive due process and judicial estoppel, as well as violation of the APA and Accardi doctrine. See Pineda, No. 1:25-cv-01616-AJT-WEF, 2025 WL 2980729, at * 3 (E.D. Va. Oct. 21, 2025) (declining to consider APA claim under similar circumstances).

was denied, the basis for such denial.

5.  If Petitioner is released on bond, Respondents are **ENJOINED** from rearresting Petitioner, unless he has committed a new violation of any federal, state, or local law, or has failed to attend any properly noticed immigration or court hearing or is subject to detention pursuant to a final order of removal.

This Order is issued on **12/17/2025** at **3:45 p.m**.

**IT IS SO ORDERED**.
Signed: December 17, 2025

Max O. Cogburn Jr
United States District Judge