UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:25-cv-938-MOC

| MOSTAFA SAID, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | **MEMORANDUM OF DECISION AND ORDER** |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al., | ) | |
| Respondents. | ) | |

**THIS MATTER** is before the Court on Petitioner's Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction. [Doc. 22].

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner Mostafa Said ("Petitioner") is a native and citizen of Egypt. He fled Egypt due to persecution and entered the United States on September 9, 2024, without inspection. [Doc. 1 at ¶¶ 1, 15]. Petitioner was apprehended the same day by U.S. Customs and Border Protection. [Doc. 1 at ¶ 15]. On September 10, 2024, the Department of Homeland Security (DHS) issued a Notice and Order of Expedited Removal ("Form I-860") to Petitioner. [Doc. 8-1 at 8]. The Form I-860 reflects that Petitioner was then subject to removal because he "w[as] not then admitted or paroled after inspection by an Immigration Officer." [Doc. 8-1 at 8]. The Order of Removal found that Petitioner was inadmissible and subject to removal under INA § 235(b)(1) [Doc. 8-1 at 8], which is codified as 8 U.S.C. § 1225(b)(1).

On September 20, 2024, Petitioner made a claim for relief from removal. [Doc. 8-1 at 1, ¶ 8: Stephens Dec.]. On October 24, 2024, the DHS made a positive initial determination on

Petitioner's claim for relief and served a Notice to Appear (NTA) on Petitioner, noted that "You are an alien present in the United States who has not been admitted or paroled;" and placed Petitioner in standard removal proceedings under INA § 240, 8 U.S.C. § 1229a. [Doc. 1-2; Doc. 8-1 at 1, ¶ 9; Doc. 1 at ¶ 17]. The NTA charged Petitioner as being subject to removal under INA § 212(a)(7)(A)(i)(l) because he did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document and under § 212(a)(6)(A)(i) because he was an alien present in the United States without being admitted or paroled after inspection by an immigration officer. [Doc. 1-2 at 1]. The NTA ordered Petitioner to appear before an immigration judge on November 7, 2024, in San Diego, California. [Doc. 1-2 at 1].

On or about November 6, 2024, the U.S. Immigration and Customs Enforcement (ICE) paroled Petitioner under the Alternatives to Detention-Intensive Supervision Appearance Program (ISAP) program pursuant to its authority under INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). [Doc. 1 at ¶ 18; Doc. 1-3; Doc. 10-1 at 2: Interim Notice Authorizing Parole ("Parole Notice")]. The Parole Notice provided that the authorization for Petitioner's parole automatically terminated after one year unless extended at ICE's discretion. [Doc. 10-1 at 2].

On November 7, 2024, the Petitioner appeared with his attorney for his initial master calendar hearing and requested a continuance. The Immigration Judge (IJ) granted the continuance and reset the case for December 9, 2024. [Doc. 8-1 at 2, ¶ 10]. On November 25, 2024, the IJ granted a change in venue of Petitioner's removal proceedings to the Charlotte Immigration Court. [Doc. 8-1 at 15: Order of IJ]. Petitioner was allowed to travel within the United States to Charlotte, North Carolina. [Doc. 1-3 at 1: ISAP GPS Agreement].

On November 21, 2024, Petitioner filed his Form I-589 asylum application with the

2

Charlotte Immigration Court. [Id. at ¶ 22]. On January 15, 2025, the Charlotte Immigration Court notified Petitioner that his next scheduled master calendar hearing is set for March 18, 2027. [Doc. 8-1 at 17: Notice of In-Person Hearing]. On May 20, 2025, the U.S. Citizenship and Immigration Services (USCIS) granted Petitioner eligibility for employment and issued Petitioner an Employment Authorization Document (EAD), which is valid through May 19, 2030. [Id. at ¶ 23; Doc. 1-4]. Since receiving his EAD, Petitioner has secured lawful employment and lived without incident in Winston-Salem, North Carolina. [Id. at ¶ 24].

On Friday, November 21, 2025, during a routine ISAP check-in, Petitioner was detained by ICE Enforcement and Removal Operations (ERO) in Charlotte, North Carolina, without warning and without a custody redetermination hearing ("bond hearing").[1] [Id. at ¶¶ 27, 29; Doc. 1-7 at ¶ 5]. On Monday, November 24, Plaintiff resurfaced at the Stewart Detention Center in Lumpkin, Georgia, with no notice of transfer, its justification, or information identifying the official custodian. [Doc. 4 at 3; Doc. 3-1 at ¶¶ 3-5: Qutieshat Dec.].

The same day as his detention, Petitioner, through counsel, filed a petition seeking relief from that detention pursuant to 28 U.S.C. § 2241, arguing, among other things, that his detention violates his Fifth Amendment right to procedural and substantive due process and violates the Immigration and Nationality Act (INA), §§ 236 and 241, 8 U.S.C. §§ 1225 and 1226. [See Doc. 1]. Petitioner seeks, among other things, a writ of habeas corpus under § 2241 directing Respondents to release him from custody or to provide him with a prompt bond hearing under 8 U.S.C. § 1226(a), a declaration that Matter of Yajure-Hurtado is unlawful as applied to Petitioner

---

[1] In Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals (BIA) held that individuals who entered without inspection are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) for the duration of their removal proceedings. 29 I&N at 220. The United States has adopted this position to categorically deny bond eligibility to noncitizens like the Petitioner.

and inconsistent with the INA and the Due Process Clause, and an award of attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. [Doc. 1 at 12]. Petitioner also sought the issuance of a temporary restraining order prohibiting Respondents from removing or transferring the Petitioner outside the jurisdiction of this Court or the United States pending adjudication of this case, which the Court granted on November 25, 2025, and extended on December 9, 2025.[2] [Id.; Doc. 12 at 3].

On November 25, 2025, Petitioner filed a motion for preliminary injunctive relief, asking the Court to order Respondents to provide him with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) or release Petitioner from custody under reasonable conditions of supervision. [Doc. 3]. Petitioner further asked the Court to enjoin Respondents from denying bond eligibility on the sole basis that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2) and the BIA's decision in Yajure-Hurtado. [Id. at 1-2].

In response, Respondents opposed the grant of injunctive relief and claimed that Petitioner was detained pursuant to 28 U.S.C. § 2255(b)(1), which mandates detention, not § 2255(b)(2), after his humanitarian parole granted under § 1182(d)(5)(A) was revoked due to alleged ISAP violations. [Doc. 8]. Respondents also argued that this Court lacks jurisdiction over the discretionary decision to revoke Petitioner's parole based on various jurisdiction-stripping provisions of the INA, including 8 U.S.C. §§ 1225(b)(1)(A)(iii), 1252(a)(2)(A), 1252(a)(2)(B), 1252(b)(9), 1252(e), and 1252(g). [See id. at 14-18].

After the Court pointed out that Respondents failed in their response to demonstrate compliance with 8 C.F.R. § 212.5(e)(2)(i) in revoking Petitioner's parole, Respondents changed their position and instead claimed that his parole automatically terminated after one year from

---

[2] This temporary restraining order expired on December 23, 2025. [See Doc. 12].

November 6, 2024, pursuant to the Parole Notice. [Doc. 10 at 2-3].

In reply, Petitioner maintained that he is detained pursuant to § 1226(a). Petitioner argued that once the DHS issues an NTA designating a noncitizen as present without admission or parole, § 1226(a) "governs detention going forward, regardless of prior processing under expedited removal or DHS's *post hoc* litigation position." [Doc. 11 at 3]. Petitioner argued that Respondents cannot avert the INA by effectively "rebranding" Petitioner as an "arriving alien" subject to mandatory detention under § 1225(b)(1). Alternatively, Petitioner argued that, even if Petitioner were detained under § 1225(b)(1), due process nonetheless requires he be afforded a bond hearing. [Id. at 4-5].

The Court set the motion for injunctive relief for hearing on December 17, 2025. [Doc. 12]. After hearing the arguments of the parties and having reviewed the record and materials before it, the Court concluded that preliminary injunctive relief was warranted. [Doc. 18 ("First TRO Order")]. As further set forth in the Court's Order, the Court found that Plaintiff was likely to succeed on the merits of his claim that his mandatory detention under § 1225(b) is unlawful under the INA and/or violates his procedural due process rights. [See id.].

The Court ordered Respondents to hold a bond hearing pursuant to 8 U.S.C. § 1226(a) within 48 hours of the Court's Order, enjoined Respondents from denying bond on grounds that Petitioner is detained pursuant to 8 U.S.C. § 1225(b), and enjoined Respondents from rearresting Petitioner if he were released on bond unless he has committed a new violation of law, failed to attend any properly noticed immigration or court hearing, or is subject to detention pursuant to a final order of removal. [Id.]. The Court also ordered that Respondents file a status report within three (3) days advising the Court regarding the results of the bond hearing, including the basis of any denial of bond. [Id.].

On December 22, 2025, Respondents filed a Status Report advising that the Stewart Immigration Court held a custody determination hearing and that Petitioner was not released on bond because he had "not met his burden to show that he would not be a significant flight risk." [Doc. 19 at 1, 4].

Now pending is Petitioner's Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Second TRO Motion"). [Doc. 22]. Petitioner seeks an injunction ordering Respondents: (1) to immediately release Petitioner from custody under reasonable conditions of supervision, or, in the alternative, to release Petitioner on bond in an amount not to exceed $20,000; (2) to continue the Immigration Court hearing scheduled for February 5, 2026, and to refrain from issuing, enforcing, or executing any order of removal until this habeas action is fully adjudicated; and (3) to issue an Order to Show Cause why Respondents should not be held in contempt for violating the Court's First TRO Order. [Id. at 1-2]. Petitioner further asks that Respondents be enjoined from rearresting Petitioner should he be released on bond or under conditions of supervision. [Id. at 2].

As grounds for this relief, Petitioner states and argues as follows. On December 19, 2025, IJ James Ward conducted the bond hearing and denied Petitioner's bond based solely on DHS's allegation that Petitioner failed to share his location through the ISAP. [Doc. 22-1 at ¶ 4: Elsayed Dec.; Doc. 23 at 2]. During the hearing, IJ Ward instructed Petitioner's counsel to withdraw the bond motion. Petitioner's counsel opposed the request and advised that he could not withdraw the motion in any event because it had been filed by DHS. [Doc. 23 at 2; Doc. 22-1 at ¶ 3]. Prior to and in connection with the bond hearing, Petitioner's counsel submitted eight declarations from community members, including attestations by several individuals willing to ensure Petitioner's appearance at all scheduled hearings; and documentary evidence of Petitioner's moral character

6

Case 3:25-cv-00938-MOC    Document 24    Filed 02/04/26    Page 6 of 12

and compliance. Counsel also presented Petitioner's cousin to testify regarding Petitioner's attendance at biometrics and ISAP appointments. [Doc. 23-1 at 2-3; Doc. 22-1 at ¶ 7; Doc. 23 at 8; see Doc. 22-2]. Immigration Judge Ward, however, refused to allow Petitioner to present witnesses or an opportunity to defend himself against the ISAP allegation and declined to consider the submitted declarations. [Doc. 22-1 at ¶ 5]. Rather, IJ Ward recessed the hearing and, on returning, denied Petitioner release on bond based solely on unauthenticated assertions by a private contractor conveyed through a government official that Plaintiff failed to share his location. [Doc. 23 at 3; Doc. 22-1 at ¶ 5; Doc. 19 at 4]. Petitioner, therefore, remained detained.

While in detention, an ICE Enforcement and Removal officer pressured Plaintiff to self-deport and gave him instructions to do so. [Doc. 22-1 at ¶ 9]. Petitioner was also told that he would never be released in the United States and that he should abandon any claim before the Immigration Court. [Doc. 22-1 at ¶ 10].

On January 13, 2026, IJ Ward scheduled Petitioner's asylum merits hearing for January 26, 2026, acknowledging external pressure to quickly complete the case and denying Petitioner's request for more time to prepare. [Doc. 23 at 3; Doc. 22-3 at ¶¶ 3-9: Beshears Dec.]. Given that all evidence, motions, and witness lists had to be submitted five (5) days prior to the hearing, Petitioner's counsel had only eight (8) days to compile and complete the evidentiary record and prepare all pre-hearing submissions. [Doc. 22-3 at ¶ 11].

On January 20, 2026, the DHS filed a motion to pretermit Petitioner's asylum application and to remove him to Uganda pursuant to Matter of C-G-I-M & L-V-S-G, 29 I&N Dec. 291 (BIA 2025),[3] despite Uganda's current designation as a "Level 3 – Reconsider Travel" country by the

---

[3] On October 31, 2025, the BIA issued Matter of C-G-I-M & L-V-S-G, which held that when DHS files a motion to pretermit an asylum application and seeks removal of the applicant to a purported "safe third county," the asylum seeker is categorically barred from pursuing asylum in the United States. [Doc. 23 at 5 (citing id., 29 I&N Dec. 291)].

7

U.S. Department of State. [Doc. 22-1 at ¶ 11; Doc. 23 at 3; Doc. 22-4]. Petitioner's counsel contends that there is no realistic likelihood that Ward will deny the pending DHS motion. [Doc. 22-1 at ¶ 11]. Thus, counsel asserts that Petitioner will be ordered removed to Uganda notwithstanding his pending asylum claim and without any individualized determination that Uganda is a safe third country for him. [Doc. 23 at 5-6]. Due to extreme weather and the newly filed DHS motion, IJ Ward continued the case and reset the hearing for February 5, 2026, stating that he could not grant further time because he was "under stress from this case." [Doc. 22-1 at ¶ 12; Doc. 23 at 3].

Petitioner now seeks relief from this Court based on the denial of due process by IJ Ward in conducting Petitioner's bond hearing. [Doc. 23 at 6]. That is, Petitioner argues that IJ Ward's finding that Petitioner posed a flight risk and the subsequent denial of bond violated Petitioner's procedural due process rights, erroneously depriving him of liberty without advancing any substantial government interest. [Doc. 23 at 7]. Petitioner's habeas petition remains pending. [Doc. 1].

**II.     ANALYSIS**

To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009); see Winter, 555 U.S. at 21. When the constitutional violation is "likely," several of these factors are satisfied. Leaders of a Beautiful Struggle v. Balt. Police Dep't, 2 F.4th 330, 346 (4th Cir. 2021) (en banc). That is, when "there is a likely constitutional violation, the irreparable harm factor is satisfied" because "the loss of constitutional freedoms, 'for even minimal periods of time,

unquestionably constitute irreparable injury.'" Id. (quoting Mills v. District of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (internal quotation omitted)).  The final two factors are satisfied when there is a likely constitutional violation because "the public interest favors protecting constitutional rights" and "a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional."  Id. (quoting Centro Tepeyac v. Montgomery Cnty., 722 F.3d 184, 191 (4th Cir. 2013)).  Thus, where a constitutional violation is "likely," the inquiry collapses into the first factor, the likelihood of success on the merits.  See Mahmoud v. McKnight, 2023 WL 5487218, at *14 (D. Md. Aug. 24, 2023), affirmed 102 F.4th 191 (4th Cir. 2024).

The Court already determined once in this matter that Petitioner was likely to succeed on the merits of his petition and ordered that Petitioner be provided a bond hearing in accordance with § 1226(a). [Doc. 18].  That Order presupposed that this hearing would be conducted in accordance with Petitioner's due process rights.  It was not.  The IJ denied Petitioner the opportunity to present testimony, declined to consider the sworn, documentary evidence submitted by Petitioner, and based his decision on an uncorroborated, unauthenticated claim by a government official that Petitioner failed to share his location for the ISAP.

"Under § 1226(e), district courts have jurisdiction to review an Immigration Judge's discretionary bond denial only where that bond denial is challenged as legally erroneous or unconstitutional."  Garcia v. Hyde, No. 25-cv-585-JJM-PAS, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025) (internal quotations and citations omitted).  Here, Petitioner challenges whether IJ Ward provided him with a constitutionally adequate bond hearing.  Petitioner's concerns are "precisely the types of claims that belong in this Court."  Id.  "[C]laims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they

fit comfortably within the scope of § 2241." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) (internal citation or quotation omitted).

The IJ Judge's refusal to hear Petitioner's cousin's testimony and to consider the numerous declarations deprived Petitioner of the "opportunity to be heard 'at a meaningful time and in a meaningful manner'" required by due process. Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Moreover, in immigration bond hearings, due process requires the IJ to consider all relevant evidence proffered by the detainee to assess flight risk or danger. See Singh, 638 F.3d at 1204-05 (requiring "adequate procedural protections" to present one's case in bond hearings, including consideration of evidence); Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942, 950 (9th Cir. 2008) (due process violated where procedures prevent meaningful challenge to detention). Furthermore, Petitioner was denied the opportunity to rebut the unauthenticated assertion of a private contractor that was the sole basis of the IJ's decision denying bond. See Mathews, 424 U.S. at 335-36 (requiring the court to weigh the additional administrative or fiscal burden incident to additional or substitute procedural requirements). Here, any interest in efficiency did not justify shortcutting basic authentication of the sole purported ground for denying bond. For these reasons, the evidence relied on by the IJ at the bond hearing could not, as a matter of law, establish that Petitioner posed a flight risk.[4] See Garcia, 2025 WL 3466312, at *7.

Now, after having been denied due process at the bond hearing, Petitioner faces loss of his asylum claim and removal to Uganda or indefinite detention pending appeal from the IJ's forthcoming decision, all without adequate time to prepare for the imminent hearing. Should the

---

[4] As such, for these same reasons, Petitioner is also likely to succeed on the merits of a claim that he was denied due process at his bond hearing.

hearing on the DHS motion to pretermit Petitioner's asylum application proceed as scheduled, the Petitioner's pending petition for habeas relief would essentially be rendered moot and the *status quo* in this matter upended. The threat of irreparable harm here is not speculative, but almost certain. In addition to the obvious and immediate harm to the Petitioner, the Court would be deprived of the ability to grant effective relief on Petitioner's petition.

Given the immediacy of the February 5 hearing, the Court will grant the pending motion without a response by Respondents.

## III.  CONCLUSION

In sum, because Petitioner has shown that he is likely to succeed on the merits of his underlying habeas petition, because he was denied due process in the conduct of the ordered bond hearing, and because the failure to order preliminary injunctive relief would cause Petitioner to suffer irreparable injury and essentially moot the Petitioner's habeas petition, the Court grants Petitioner's motion.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 22] is **GRANTED** in accordance with the terms of this Order.
2. The Immigration Court hearing scheduled for February 5, 2026, is hereby **CONTINUED**.
3. The Immigration Court is hereby **ENJOINED** from issuing, enforcing, or executing any order of removal until this habeas action is fully adjudicated.
4. Respondents shall have until 2 p.m. on Friday February 6, 2026, in which to file a response to the TRO motion, pending further orders from the Court.

**IT IS SO ORDERED**.

Signed: February 4, 2026

Max O. Cogburn Jr
United States District Judge