**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:25-cv-00938-MOC**

| | |
|---|---|
| MOSTAFA SAID, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| MARKWAYNE MULLIN, et al., ) | |
| ) | |
| Respondents. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Petition for Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2241 [Doc. 1], Respondents' Motion to Dismiss and in the Alternative for

Summary Judgment [Doc. 35], Petitioner's Response to Order to Show Cause [Doc. 47], and

Respondents' Motion to Seal [Doc. 50].

**I.     BACKGROUND AND PROCEDURAL HISTORY**

For efficiency's sake, the Court herein incorporates by reference its previous Orders in this

matter.  Briefly, for ease of reference, the following history and background are provided.

Petitioner Mostafa Said ("Petitioner") is a native and citizen of Egypt.  He fled Egypt due

to persecution and entered the United States on September 9, 2024, without inspection.  [Doc. 1 at

¶¶ 1, 15; Doc. 36-1 at ¶¶ 4-5: Stephens Dec.].  On Friday, November 21, 2025, during a routine

ISAP[1] check-in, Petitioner was detained by ICE Enforcement and Removal Operations (ERO) in

Charlotte, North Carolina, apparently pursuant to an arrest warrant but without warning and

without a custody redetermination hearing ("bond hearing").  [Id. at ¶¶ 27, 29; Doc. 1-7 at ¶ 5; see

---

[1] "ISAP" refers to the U.S. Immigration and Customs Enforcement's (ICE) Alternatives to Detention-
Intensive Supervision Appearance Program.

Doc. 8-1 at 6].

The same day, Petitioner, through his attorney Amro Elsayed, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), seeking release from ICE custody or, alternatively, a bond hearing under 8 U.S.C. § 1226(a) on the grounds that his ongoing detention violates the Immigration and Nationality Act (INA), §§ 236 and 241, 8 U.S.C. §§ 1225 and 1226, and his constitutional due process rights.[2]  [See Doc. 1].

A few days later, Petitioner filed a motion for preliminary injunctive relief, asking the Court to order Respondents to provide him with an individualized bond hearing pursuant to § 1226(a) or release Petitioner from custody under reasonable conditions of supervision ("First TRO Motion").  [Doc. 3].  The Court granted Petitioner's motion for preliminary injunctive relief and ordered Respondents to hold a bond hearing pursuant to § 1226(a) within 48 hours of the Court's Order and enjoined Respondents from denying bond on grounds that Petitioner is detained pursuant to 8 U.S.C. § 1225(b).  [Doc. 18 ("First TRO Order")].  The bond hearing was conducted, but Petitioner was not released on bond because he had "not met his burden to show that he would not be a significant flight risk."  [Doc. 19 at 1, 4].

On February 3, 2026, Petitioner filed a Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Second TRO Motion"), seeking, among other things, immediate release from custody under reasonable conditions of supervision or, alternatively, release on bond; for the Court to continue an Immigration Court hearing scheduled for February 5, 2026, on the Department of Homeland Security's ("DHS") motion to pretermit

---

[2] Petitioner also sought the issuance of a temporary restraining order prohibiting Respondents from removing or transferring the Petitioner outside the jurisdiction of this Court or the United States pending adjudication of this case, which the Court granted on November 25, 2025, and extended on December 9, 2025.  [Id.; Doc. 12 at 3].  This temporary restraining order expired on December 23, 2025.  [See Doc. 12].

Petitioner's asylum application; and to enjoin Respondents from rearresting Petitioner should he be released on bond or under conditions of supervision. [Doc. 22]. Given the immediacy of the February 5 hearing and based on the representations made by the Petitioner regarding the conduct of the bond hearing, the Court granted Petitioner's Second TRO Motion, in part, ordering that the February 5 hearing be continued and enjoining the Immigration Court from issuing, enforcing, or executing any order of removal until this habeas action is fully adjudicated. [Doc. 24 at 11 ("Second TRO Order")].

The parties fully briefed the matter, and Respondents filed the audio recording of the bond hearing. At the hearing on the Second TRO Motion, the Court listened to the audio recording of the bond hearing and heard the arguments of the parties on Petitioner's motion for injunctive relief. About ten days after this Court's hearing, Respondents filed a transcript of the bond hearing and a supplemental brief. [Docs. 32-1, 33]. In reply, Petitioner stated that he appeared at a second bond hearing on February 23, 2026, before a different Immigration Judge, IJ Harness, where bond was again denied. [Doc. 34 at 6; Doc. 34-1]. Petitioner provided a copy of the IJ's Order denying bond. [Doc. 34-1]. Other than claiming that IJ Harness' Order "contradicted" putative discrepancies that Petitioner identified in the Log of Petitioner's ISAP violations,[3] Petitioner did not identify any errors or otherwise take issue with this second bond redetermination hearing. [See

---

[3] That is, the Log of Petitioner's ISAP violations, which Respondents initially asserted as grounds to terminate Petitioner's humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and arrest him, indicates that Petitioner is in "expedited removal" proceedings, which Petitioner states is "demonstrably incorrect." [Doc. 8-1 at 19: Log; Doc. 34 at 6]. Once the Court noted Respondents' failure to allege or demonstrate compliance with 8 C.F.R. § 212.5(e)(2)(i) [Doc. 9 at 2], which requires written notice that the purposes of a particular noncitizen's parole have been met or that the statutorily-provided reasons for parole no longer exist after "an individualized review," Darwich v. Kemerling, 1:25-CV-1162, 2026 WL 170801, at *7 (M.D.N.C. Jan. 22, 2026) (citation omitted), in revoking Petitioner's parole, Respondents argued that Petitioner was actually arrested after his humanitarian parole, which was granted on November 6, 2024, automatically terminated after one year. [Doc. 10]. Under 8 C.F.R. § 212.5(e)(1)(ii), written notice of automatic termination is not required.

Doc. 34 at 6; see also Doc. 41 at 21, n.6 (noting the discrepancy appears to be nothing more than an administrative error)].

On April 2, 2026, as further set forth in its Order (the "Order"), the Court denied the remaining portion of the Second TRO Motion as moot. [Doc. 41]. Although the Court determined that Plaintiff's due process rights were violated in the conduct of the court-ordered bond hearing before Judge Ward, the Court found that the second bond hearing before Judge Harness comported with due process. [Id. at 20-21]. Although noting that it likely would have reached a different conclusion regarding Petitioner's risk of flight, the Court was "constrained not to second guess and substitute its own judgment for that of the Immigration Judge." [Id. at 21]. The Court, therefore, denied Petitioner's motion for injunctive relief as moot. [Id.]. The Court, however, extended its order enjoining the Immigration Court from issuing, enforcing, or executing any order of removal until this habeas action is fully adjudicated pending further orders of this Court. [Id. at 21-22].

Meanwhile, on March 11, 2026, the Respondents moved to dismiss or, alternatively, for summary judgment on the Petition on the grounds stated in the motion. [Doc. 35]. Petitioner responded in opposition to Respondents' motion to dismiss, arguing among other things that the bond hearings in this case "were not conducted in good faith but instead reflect a broader pattern of undermining habeas relief." [Doc. 39 at 9-10]. Two days later, the Court entered the Order denying preliminary injunctive relief, holding among other things that the second bond hearing comported with due process. [Doc. 41; see Doc. 22]. Thereafter, Respondents replied to Petitioner's opposition to their motion to dismiss, arguing that the Order, along with previous action by the Court, effectively adjudicated most of the relief sought by the Petitioner in the Petition and that the remaining issue(s) can be decided as a matter of law. [See Doc. 43]. The

4

Court ordered the Petitioner to show cause why the Petition should not be dismissed in light of the Order. [Doc. 45].

Petitioner responded. [Doc. 47]. Petitioner does not address Respondents' mootness argument. [See id.]. Rather, he argues that his *de facto* mandatory detention remains unlawful. [Id. at 1, 6-7]. Alternatively, he asks the Court to grant leave to amend his Petition "to address Respondents' newly asserted parole-expiration theory" where the statutory purpose underlying his parole pursuant to 8 U.S.C. § 1182(d)(5)(A) has not been served. [Id. at 8-10].

The Court also ordered Petitioner to update it on the status of his immigration proceedings. [Doc. 45 at 2]. Among other things, Petitioner reports that the parties had engaged in settlement negotiations, which faltered due to DHS insisting on conditions that Petitioner cannot reasonably accept, and that Petitioner has been transferred to Moshannon Valley Processing Center in Pennsylvania. [Doc. 46]. Recently, Respondents informed the Court that the Immigration Court held a merits hearing on July 1, 2026, and rendered a merits decision in Petitioner's immigration proceedings. [Docs. 48, 49]. Respondents have also filed a consent motion to seal certain documents related to those proceedings [Doc. 50], which the Court addresses below.

This matter is ripe for adjudication.

## II.   ANALYSIS

### A.   Mootness

Mootness "goes to the heart of the Article III jurisdiction of the courts." Suarez Corp. Indus. V. McGraw, 125 F.3d 222, 228 (4th Cir. 1997). See Arizonians for Official English v. Arizona, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (internal quotation marks omitted). "[A] federal court has no

authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)).  A claim may be mooted "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).  "A change in factual circumstances can moot a case," Williams v. Ozmint, 716 F.3d 801, 809 (4th Cir. 2013), such as "when an event occurs that makes it impossible for the court to grant any effectual relief to the plaintiff," Id. (citing Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)).

In his Petition, Petitioner seeks a writ of habeas corpus directing Respondents to release him from custody or to provide him with a prompt bond hearing under 8 U.S.C. § 1226(a), a declaration that Matter of Yajure-Hurtado, 29 I&N Dec. 216 (BIA 2025),[4] is unlawful as applied to Petitioner and inconsistent with the INA and the Due Process Clause, and an award of attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  [Doc. 1 at 12].

Respondents argue that the crux of the relief sought by Petitioner, that is, a constitutionally adequate bond hearing under § 1226(a), is moot where the Court determined Petitioner's second

---

[4] In Matter of Yajure-Hurtado, the Board of Immigration Appeals (BIA) held that individuals who entered without inspection are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) for the duration of their removal proceedings. 29 I&N at 220. The United States has adopted this position to categorically deny bond eligibility to noncitizens like the Petitioner. The Circuits are split on the issue.  See Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026) (upholding mandatory detention); Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) (same). Cf. Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026) (bond hearing required); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026) (same); Castañon-Nava v. U.S. Dep't of Homeland Sec., 175 F.4th 828 (7th Cir. 2026) (same); Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258 (11th Cir. 2026) (same).  The Fourth Circuit has not yet weighed in.

6

bond hearing comported with due process and effectively rejected Petitioner's request for immediate release on bond or other supervised conditions. [Doc. 43 at 3-5]. Moreover, in ordering a bond hearing under § 1226(a), the Court determined that Matter of Yajure-Hurtado was unlawful as applied to Petitioner. [Id. at 4-5]. Respondents further contend that the preliminary injunction should be lifted because there is no longer a reason to preserve the Court's jurisdiction by prohibiting Petitioner's transfer. [Id. at 4].

As noted, Petitioner does not counter Respondents' mootness argument. [See Doc. 47]. Rather, he contends that his detention "is not truly discretionary" because it generally resulted from "a system in which release under § 1226(a) exists in theory only," [id. at 7], and, in passing fashion, argues that "the denial of his release on bond was not meaningfully based on the record presented before the Immigration Judge," [id. (citing Doc. 34)].

While the Petitioner may disagree with the Court's assessment of the second bond hearing, the Court finds that the relief sought by Petitioner, other than his request for attorney's fees, has been resolved and adjudicated by the Court and intervening events. See Eden, LLC v. Justice, 36 F.4th 166, 170 (4th Cir. 2022) ("Win or lose, they have already received the 'precise relief' they sought in this case: termination of the challenged executive orders."). As such, as for these requests for relief, Petitioner's Petition is moot and will be dismissed on that ground.[5]

As for attorney's fees, under the EAJA, 28 U.S.C. § 2412, "[a] court shall award to a prevailing party other than the United States fees and other expenses … incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States … unless the court finds that the position

---

[5] The Court, therefore, will deny Respondents' motion to dismiss as moot.

of the United States was substantially justified or that special circumstances make an award unjust." Id., § 2412(d)(1)(A).

Petitioner asks for an award of attorney's fees and costs pursuant to the EAJA. [Doc. 1 at 12]. In Obando-Segura v. Garland, the Fourth Circuit held that a habeas proceeding is not a "civil action" under the EAJA and, therefore, affirmed the district court's denial of a federal immigration detainee's action for attorney fees under the EAJA. 999 F.3d 190, 195 (4th Cir. 2021) (noting that the "dual" criminal and civil aspects of a habeas proceeding, "as well as the differences between habeas proceedings and normal civil actions, render habeas proceedings as a whole hybrid proceedings and dictate that [petitioner's] application for the writ of habeas corpus is not unambiguously a civil action") (internal quotations omitted). The Court is constrained to apply Obando-Segura here and deny Petitioner's request for attorney's fees under the EAJA.

### B.      Request to Amend the Petition

Alternatively, in his Show Cause Response, Petitioner asks to amend his Petition to assert an independent claim for relief on the grounds that Petitioner's detention is unlawful because Respondents did not find that the purpose of his humanitarian parole had been served under 8 U.S.C. § 1182(d)(5)(A) before arresting him in November 2025. [Doc. 47 at 8-10]. Petitioner argues that, despite relying on this provision to support Petitioner's arrest and detention, Respondents have never explained how the purpose of Petitioner's parole has been served as required by that provision. [Id. at 9-10]. Furthermore, Petitioner provides that the purpose of Petitioner's parole – pursuit of his ongoing asylum application – has not, in fact, been served. [Id. at 10].

In support of this new claim, Petitioner points to two cases, Seleznev v. Mullin, 2026 WL 907692 (E.D. Va. Apr. 2, 2026), and Darwich, 2026 WL 170801. [Doc. 47 at 8-9]. In Seleznev,

the petitioner, who had been granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and filed an asylum application, was detained without an arrest warrant. 2026 WL 907692, at *1-*2. Despite recognizing that the petitioner's parole may have automatically terminated before his arrest, the District Court concluded that the respondents deprived the petitioner of due process under the INA by revoking his parole while petitioner's asylum application remained pending, noting that respondents made no contrary argument and that the parties had failed to discuss the regulations implementing § 1182(d)(5)(A) or what protections respondents must afford petitioner under 8 C.F.R. § 212.5(e)(1)-(2). 2026 WL 907692, at *6 & n.5. In so finding, the District Court noted, however, that "[t]he automatic expiration of an individual's parole typically determines whether or not that individual is entitled to notice before their parole is revoked." Id. at *6 (citing 8 C.F.R. § 212.5(e)(1)(ii)).

In Darwich, the petitioner, who had been released on parole pending exclusion proceedings in 1992 and later applied for asylum and withholding of removal, was arrested at his home in Charlotte in October 2025 without any warrant or order for arrest and absent any evidence that his parole had terminated. 2026 WL 170801, at *1-*2. On November 3, 2025, after the petitioner's arrest, the ICE Field Office Director issued a letter purporting to terminate the petitioner's parole pursuant to 8 C.F.R. § 212.5(e)(2)(i), which noted that "[n]either urgent humanitarian reasons nor significant public benefit warrant [his] continued parole at this time." Id. at *2. In ordering the petitioner's release, the District Court concluded that the petitioner was "in custody in violation of the laws of the United States" because the government failed to terminate his parole by providing written notice as required by 8 C.F.R. § 212.5(e)(2)(i) before his arrest and such purported notice had no indicia of an individualized review. Id. at *5-*7.

9

Because Petitioner's humanitarian parole automatically terminated after one year [see Doc. 10-1 at 2], written notice after an individualized determination pursuant to 8 C.F.R. § 212.5(e)(2)(i) was not required. See A.A. v. Crawford, No. 3:26cv301, 2026 WL 1601798, at *3 (E.D. Va. Jun. 4, 2026) (explaining that notice and accomplishment of parole's purpose are required for termination of parole only where parolee is subject to a fixed period of parole that has not run). As such, amendment of Petitioner's Petition to assert a claim on the grounds sought would be futile. The Court, therefore, denies this request.

The Court nonetheless is troubled by the heavy-handed manner in which the Petitioner's immigration proceedings have been conducted, beginning with his November 2025 arrest through the conduct of the merits hearing despite the Court's Order enjoining the issuing or enforcing of a removal order. While the Petitioner has consistently raised important questions illuminating the Court's concerns, the Court is constrained to limit its reach to that allowed by the relevant legal framework.

### C.      Respondents' Motion to Seal

As noted, on July 1, 2026, the Immigration Court held a merits hearing and issued a decision in Petitioner's immigration proceedings. [Docs. 48-1, 49]. The next day, Respondents filed a motion to seal (1) the July 1, 2026 Order of the Immigration Judge, (2) the referenced citation to federal law, and (3) the supporting memorandum and filed those documents under seal.[6] [Doc. 50; see Docs. 51, 51-1, 51-2].

As grounds to seal, Respondents state that the July 1, 2026 Order contains sensitive immigration-related adjudicative information protected by federal law more specifically identified in the Respondents' sealed Memorandum. [Id. at 4; Doc. 51 at 4]. Respondents contend that

---

[6] Respondents also filed a redacted version of the July 1, 2026 Order for the Court's reference. [Doc. 51-3].

sealing is necessary to comply with federal law, protect Petitioner's interests, and protect the integrity of the immigration process. [Id. at 4]. Respondents argue that there is no alternative to sealing and request permanent sealing. [Id.; Doc. 51 at 6]. In their sealed Memorandum, Respondents also provide the information justifying sealing in accordance with LCvR 6.1(b)(4). [Doc. 51 at 6].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000).

In the present case, the public has been provided with adequate notice and an opportunity to object to the Respondents' motion. Respondents filed their motion on July 2, 2026, and it has been accessible through the Court's electronic case filing system since that time. Moreover, the public's right of access to the subject records is substantially outweighed by the competing interest in complying with federal law and protecting the confidentiality of the materials, Petitioner's interests therein, and the integrity of the immigration process. Having considered less drastic alternatives to sealing these records, the Court concludes that sealing the subject materials is necessary to protect the implicated interests. As such, the Court will grant Respondents' motion to seal and order that Docket Nos. 51, 51-1, 51-2, and 51-3 remain sealed. The Court will, however, order the Respondents to file the redacted version of the July 1, 2026 Order in the docket in this matter, as it does not implicate the foregoing concerns. [See Doc. 51-3].

IV.    CONCLUSION

In sum, the Court will deny and dismiss Petitioner's Petition, deny Respondents' motion to dismiss as moot, grant the consent motion to seal, order Respondents to file the redacted July 1, 2026 Order, and lift the Court's Order enjoining the Immigration Court from issuing or enforcing an order of removal.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Petitioner's Petition for Writ of Habeas Corpus [Doc. 1] is **DENIED** and **DISMISSED** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Respondents' Motion to Dismiss and in the Alternative Motion for Summary Judgment [Doc. 35] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Respondents' Motion to Seal [Doc. 50] is **GRANTED** and Docket Nos. 51, 51-1, 51-2, and 51-3 shall remain sealed and that Respondents shall **FILE** a copy of the redacted July 1, 2026 Order in the immigration proceedings in this matter.

**IT IS FURTHER ORDERED** that the Court's Order enjoining the Immigration Court from issuing, enforcing, or executing any order of removal until this action is fully adjudicated is hereby **LIFTED**.

The Clerk is respectfully instructed to close this case.

**IT IS SO ORDERED.**

Signed: July 7, 2026

Max O. Cogburn Jr
United States District Judge

12